1
2
3
4
                    UNITED STATES DISTRICT COURT

5
             NORTHERN DISTRICT OF CALIFORNIA

6

7    DIAMOND REAL ESTATE, et al.,        Case No.  16-cv-03937-HSG

             Plaintiffs,

8                            **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

9         v.

                        Re: Dkt. No. 7

10   AMERICAN BROKERS CONDUIT, et al.,

             Defendants.

11

12   **I.    INTRODUCTION**

13          On May 26, 2016, Diamond Real Estate ("Diamond"), Porfirio Jorque, and Editha Palancia

14   (collectively, "Plaintiffs") filed a complaint in state court alleging sixteen causes of action against

15   American Brokers Conduit; American Home Mortgage Servicing, Inc. ("AHMS"); American

16   Home Mortgage Acceptance, Inc.; American Home Mortgage Assets, LLC; Citibank, N.A., as

17   Trustee American Home Mortgage Assets Trust 2006-3, Mortgage-Backed Pass Through

18   Certificates Series 2006-3 ("Citibank"); Ocwen Loan Servicing, LLC ("Ocwen"); Western

19   Progressive, LLC ("Western"); Mortgage Electronic Registration Systems, Inc. ("MERS"); and

20   Does 1 through 50, inclusive.  On July 13, 2016, Ocwen removed the action to federal court

21   pursuant to 28 U.S.C. § 1441(c) based upon federal question jurisdiction under 28 U.S.C. § 1331.

22   Dkt. No. 1 at 3.

23          On July 20, 2016, Ocwen, Citibank, AHMS, and MERS (collectively, "Defendants") filed

24   the pending motion to dismiss Plaintiffs' complaint pursuant to Federal Rule of Civil Procedure

25   12(b)(6), Dkt. No. 7 ("Mot."), as well as a request for judicial notice, Dkt. No. 8 ("RJN").

26   Although Plaintiffs missed the first two deadlines to file their opposition, *see* Dkt. Nos. 17, 19,

27   after the case was reassigned, Dkt. No. 21, the Court set a new deadline of August 25, 2016, Dkt.

28   No. 25, when Plaintiffs finally filed their opposition, Dkt. No. 26 ("Opp.").  The opposition was

United States District Court
Northern District of California

over eleven pages longer than permitted, and lacked the requisite tables.  *See* Civil L.R. 7-4(b) (opposition brief may not exceed 25 pages); Civil L.R. 7-4(a)(2) (briefs over ten pages must include table of contents and table of authorities).  On August 31, 2016, Defendants replied.  Dkt. No. 27 ("Reply").  More than three weeks later, on September 23, 2016, Plaintiffs filed a "Response" to Defendants' reply, Dkt. No. 29 ("Response"), even though this was not permitted by the Local Rules, *see* Civil L.R. 7-3(d) (prohibiting any additional filings after a reply has been filed, except for two circumstances that do not apply here).[1]

On November 16, 2016, the Court continued the hearing on the motion to dismiss.  Dkt. No. 43.  In that order, the Court directed corporate Plaintiff Diamond to file a declaration by December 16, 2016, stating that it had obtained counsel.  *Id.*  After the Court granted an extension of time, Dkt. No. 53, Diamond filed papers on December 30, 2016, reflecting it had obtained counsel, Dkt. Nos. 54-55.  Plaintiffs Jorque and Palancia continue to proceed *pro se*.

In its November 16, 2016 order, the Court also directed the parties to file supplemental briefing regarding the issue of whether Plaintiffs Jorque and Palancia are real parties in interest under Federal Rule of Civil Procedure 17(a)(1).  *See* Dkt. No. 43 ("The Court therefore ORDERS Defendants to file supplemental briefing not to exceed 10 pages no later than December 23, 2016, explaining on a claim-by-claim basis why the substantive law governing each claim alleged by Plaintiffs does not grant them a cause of action so as to make them real parties in interest pursuant to Fed. R. Civ. P. 17(a). The Court ORDERS Plaintiffs to file responsive supplemental briefing on the same question, also not to exceed 10 pages, no later than January 6, 2016.")  Defendants filed a supplemental brief on December 21, 2016, which largely rehashed their arguments from the motion to dismiss and reply.  Dkt. No. 52 ("Supp. Br.").  Plaintiffs failed to file a supplemental brief, despite the fact that Diamond obtained counsel prior to the deadline.

The Court has carefully considered the parties' arguments in their written submissions, finds the matter is suitable for disposition without oral argument, *see* Civ. L.R. 7-1(b), and **GRANTS** Defendants' motion to dismiss.

---

[1] Since Plaintiffs' "Response" was filed in violation of the Local Rules, the Court **STRIKES** the filing, and does not consider the arguments made in it.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II.    REQUEST FOR JUDICIAL NOTICE

The Court first addresses Defendants' request for judicial notice because, if warranted, it would add helpful structure to the factual allegations set forth in the complaint.  Defendants seek to judicially notice publicly-recorded instruments and notices involving the real property at issue in this case. Plaintiffs have not opposed Defendants' RJN.  *See generally* Opp.

The Court may take judicial notice of documents "not subject to reasonable dispute."  Fed. R. Evid. 201(b).  Publicly-recorded real estate instruments and notices are the proper subject of judicial notice, unless subject to reasonable dispute.  *See Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004) (declaring that courts may judicially notice matters of public record that are not subject to reasonable dispute); *Gamboa v. Tr. Corps & Cent. Mortg. Loan Servicing Co.*, No. 09-0007 SC, 2009 WL 656285, at **2-3 (N.D. Cal. Mar. 12, 2009) (taking judicial notice of various publicly recorded real estate instruments and notices that directly related to the parties' transactional history and claims).

The Court **GRANTS** Defendants' RJN with relation to Exhibits A through J, as these publicly-recorded real estate instruments and notices are not subject to reasonable dispute.[2]  The Court **DENIES AS MOOT** Defendants' RJN with relation to Exhibit K, as that document relates to an argument that is now moot.[3]

## III.    BACKGROUND

This action arises out of a foreclosure on real property located in Hayward, California ("Subject Property").  Plaintiffs Porfirio Jorque and Editha Palancia obtained a loan in the amount of $460,000 ("Subject Loan") in June 2006 secured by a Deed of Trust that was recorded on June

---

[2] Specifically, these documents, all of which were recorded in the Official Records of Alameda County, California, are the following: *Deed of Trust*, recorded June 12, 2006 (Ex. A); *Corporation Grant Deed*, recorded October 17, 2012 (Ex. B); *Grant Deed*, recorded October 17, 2012 (Ex. C); *Assignment of Deed of Trust*, recorded July 5, 2013 (Ex. D.); *Quitclaim Deed*, recorded September 15, 2014 (Ex. E); *Corporation Grant Deed*, recorded December 26, 2014 (Ex. F.); *Substitution of Trustee*, recorded August 21, 2014 (Ex. G); *Notice of Default and Election to Sell Under Deed of Trust*, recorded July 7, 2015 (Ex. H); *Notice of Trustee's Sale*, recorded December 7, 2015 (Ex. I); *Trustee's Deed Upon Sale*, recorded April 26, 2016 (Ex. J).
[3] Exhibit K is the "Business Entity Detail" from the California Secretary of State website. Defendants' motion to dismiss cites the exhibit only with reference to the argument that Diamond lacks standing as an unrepresented corporate entity.  *See* Mot. 4.  Since the filing of Defendants' motion, however, Diamond has acquired counsel, so this argument is now moot.

12, 2006.  *See* RJN, Ex. A.  In October 2012, a company called Diamond Investments, Inc. recorded a Grant Deed transferring Jorque and Palancia's interest in the Subject Property to Diamond Investments, Inc.  *Id.* Ex. C.  The same day, Alma Valdez, who is not party to this action, recorded a transfer of 10% of Diamond Investment, Inc.'s interest in the Subject Property to her.  *Id.* Ex. B.  Both of the transfers recorded in October 2012 had originally been executed in July 2011.  *Id.* Exs. B-C.   In July 2013, the beneficial interest in the Subject Property was transferred to Citibank.  *Id.* Ex. D.  In May 2014, a notice and recession of default was issued. Compl. Ex. G.  In September 2014, Alma Valdez transferred her 10% interest back to Diamond Investments.  RJN, Ex. E.  In December 2014, Diamond Investments transferred its interest in the Subject Property to Plaintiff Diamond.  *Id.* Ex. F.  In August 2014, Western Progressive, LLC was substituted as the new trustee under the Deed of Trust.  *Id.* Ex. G.

Plaintiffs defaulted on the Subject Loan in July 2015, owing $134,766.23.  *Id.* Ex. H.   A notice of trustee's sale was recorded in December 2015, which estimated that the unpaid balance and other charges on the loan totaled $659,216.94.  *Id.*  In April 2016, a foreclosure sale took place, and Citibank took title.  *Id.* Ex. J.  In May 2016, a securitization audit report was completed for Jorque and Palancia with relation to the property at issue, based upon documents submitted by them.  Compl. Ex. B.  The report puts forward a series of concerns relating to the Subject Loan, Deed of Trust, assignments, appointments, and representation in foreclosure.  *See id.* at 2 (summarizing the five main issues discussed in the report).

Plaintiffs' 63-page complaint (which attaches 121 pages of exhibits), filed in July 2016, alleges the following sixteen causes of action against all Defendants: (1) violation of section 2923.6 of the California Civil Code; (2) breach of the covenant of good faith and fair dealing; (3) injunctive relief; (4) violation of California Civil Code 1572; (5) fraud; (6) intentional misrepresentation; (7) declaration of relief; (8) violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*; (9) violation of the Real Estate Settlement Procedures Act ("RESPA"), 1 U.S.C. § 2601, *et seq.*; (10) rescission; (11) "Unfair and Deceptive Business Act Practices"; (12)

1    defective and wrongful foreclosure, Cal. Civ. Code §§ 2932.5, 2924.11[4]; (13) breach of fiduciary

2    duty; (14) unconscionability; (15) quiet title; (16) violation of California's Unfair Competition

3    Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*  *See* Compl. ¶¶ 124-250.

4    **IV.    LEGAL STANDARD**

5            **A.    Rule 12(b)(6)**

6            Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain

7    statement of the claim showing that the pleader is entitled to relief[.]"  A defendant may move to

8    dismiss a complaint for failing to state a claim upon which relief can be granted under Federal

9    Rule of Civil Procedure 12(b)(6).  "Dismissal under Rule 12(b)(6) is appropriate only where the

10   complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."

11   *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).  To survive a Rule

12   12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on

13   its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible

14   when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that

15   the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

16           In reviewing the plausibility of a complaint, courts "accept factual allegations in the

17   complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

18   *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nonetheless,

19   Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

20   fact, or unreasonable inferences."  *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

21   2008).  And even where facts are accepted as true, "a plaintiff may plead [him]self out of court" if

22   he "plead[s] facts which establish that he cannot prevail on his . . . claim."  *Weisbuch v. Cnty. of*

23   *Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted).

24           "Pleadings must be construed so as to do justice."  Fed. R. Civ. P. 8(e).  For that reason, "a

25   *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal

26

27   ─────────────────────────

28   [4] The complaint also lists a so-called section 292 of the Civil Code, *see* Compl. ¶¶ 207-08
     (heading for twelfth cause of action, located between paragraphs 207 and 208).  However, no such
     section of the Civil Code currently exists.

United States District Court
Northern District of California

pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted).  If dismissal is still appropriate, a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal quotation marks omitted).  Where leave to amend is appropriate, "before dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992).

### B.    Rule 9(b)

Federal Rule of Civil Procedure 9(b) heightens these pleading requirements for all claims that "sound in fraud" or are "grounded in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  "[The Ninth Circuit] has interpreted Rule 9(b) to require that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (internal quotation marks and citation omitted).

In short, a fraud claim must state "the who, what, when, where, and how" of the alleged conduct, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false and misleading," *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as stated in Ronconi v. Larkin*, 252 F.3d 423, 429 & n.6 (9th Cir. 2001).  "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Where multiple defendants are accused of fraudulent conduct, the plaintiff must identify the role of each defendant in the alleged fraudulent scheme.  *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged

6

1    participation in the fraud.").

2    **V.    DISCUSSION**

3           The Court considers each of the sixteen causes of action below.  For the sake of

4    comprehension and judicial economy, the Court has reordered or grouped together certain causes

5    of action.

6           **A.    Cal. Civ. Code 2926.3**

7           The Homeowners Bill of Rights ("HBOR") states, in relevant part, "If a borrower submits

8    a complete application for a first lien loan modification . . . [a lender] shall not record a notice of

9    default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification

10   application is pending."  Cal. Civ. Code § 2923.6(c).[5]

11          Here, Plaintiffs Jorque and Palancia fail to state an HBOR claim because they have not

12   pled that they have submitted a completed loan modification application.[6]  Similarly, although

13   Diamond pleads that it purchased the Subject Property, assumed the Subject Loan, and has been

14   "<u>pursuing the loan modification with the original holder</u>" since approximately December 2014, *see*

15   Compl. ¶¶ 115-16 (emphasis in original), Diamond fails to plead that it actually submitted a

16   completed loan modification application.

17          **B.    Breach of Covenant of Good Faith and Fair Dealing**

18          In California, the following factual elements are necessary to show breach of the covenant

19   of good faith and fair dealing:

20               (1) the parties entered into a contract; (2) the plaintiff fulfilled his
                 obligations under the contract; (3) any conditions precedent to the
21               defendant's performance occurred; (4) the defendant unfairly
                 interfered with the plaintiff's rights to receive the benefits of the
22               contract; and (5) the plaintiff was harmed by the defendant's
                 conduct.

23   *Evenfe v. Esalen Inst.*, 2016 WL 3965167, at *6 (quoting *Rosenfeld v. JPMorgan Chase Bank,*

24   *N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010)); CACI 325 (Aug. 2016) (California civil jury

25   ―――――――――――――――――

26   [5] There are three exceptions to this general rule, but they appear irrelevant here.  *See* Cal. Civ.
     Code § 2923.6(c).  In addition, section 2923.6(g) provides that servicers are not obligated to
27   evaluate subsequent loan modification applications under certain circumstances, but this provision
     also appears irrelevant here.
28   [6] This is unsurprising, given that Plaintiffs Jorque and Palancia apparently transferred their interest
     in the Subject Property over four years ago.  *See* RJN, Ex. C.

United States District Court
Northern District of California

1    instructions).

2          Plaintiffs appear to be alleging that the commencement of foreclosure proceedings

3    breached an implied covenant of good faith and fair dealing based upon the Deed of Trust.  *See*

4    Compl. ¶¶ 132-40.  However, Plaintiff Diamond cannot state the first element of the claim because

5    it was not a party to that contract.  *See* RJN, Ex. A.  Plaintiffs Jorque and Palancia have failed to

6    plausibly state the second element of the claim: that they fulfilled their obligations under the

7    contract.  To the contrary, Plaintiffs defaulted on the Subject Loan.  *See* RJN, Ex. H.

8          Moreover, an implied covenant cannot be read to prohibit a party from doing what is

9    permitted by the express terms of the contract, as Plaintiffs would have the Court do here.  *See*

10   *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 373-74 (1992) ("It is

11   universally recognized the scope of conduct prohibited by the covenant of good faith is

12   circumscribed by the purposes and express terms of the contract. . . .  We are aware of no reported

13   case in which a court has held the covenant of good faith may be read to prohibit a party from

14   doing that which is expressly permitted by an agreement.  On the contrary, as a general matter,

15   implied terms should never be read to vary express terms.")

16         **C.    Cal. Civ. Code § 1572, Fraud, and Intentional Misrepresentation**

17         Plaintiffs allege three causes of action sounding or grounded in fraud.  *See* Compl. ¶¶ 151-

18   60 (Cal. Civ. Code § 1572 ("Actual Fraud")); *id.* ¶¶ 161-179 (fraud); *id.* ¶¶ 180-82 (intentional

19   misrepresentation).   However, they fail to adequately state "the who, what, when, where, and

20   how" of the alleged conduct, *see Cooper*, 137 F.3d at 627, and to "set forth an explanation as to

21   why [a] statement or omission complained of was false and misleading," *In re GlenFed*, 42 F.3d at

22   1548.  Moreover, except for a brief reference to Western, *see* Compl. ¶¶ 166-67, Plaintiffs fail to

23   identify the role of each defendant in the alleged fraudulent scheme, *see id.* ¶¶ 151-165, 168-82, as

24   required by the Ninth Circuit.  *See Swartz*, 476 F.3d at 764-65 ("Rule 9(b) does not allow a

25   complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate

26   their allegations when suing more than one defendant and inform each defendant separately of the

27   allegations surrounding his alleged participation in the fraud.").  Therefore, these three causes of

28   action must be dismissed because they fail to meet the particularity standards of Rule 9(b).

United States District Court
Northern District of California

8

**D.    TILA and Rescission**

TILA's purpose is to "assure meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1170 (quoting 15 U.S.C. § 1601(a)).  Where the required disclosures are not made, TILA provides for claims of rescission, 15 U.S.C. § 1635 (2012), or damages, *id.* § 1640(e).  However, TILA claims for rescission are barred for residential mortgage transactions.  15 U.S.C. § 1635(e)(1)(A); *Oliva v. Nat'l City Mortg. Co.*, 490 F. App'x 904, 905 (9th Cir. 2012)[7]; *Perez v. JPMorgan Chase Bank*, No. C 11-03602 CW, 2012 WL 899944, at *3 (N.D. Cal. Mar. 15, 2012); *see also id.* § 1602(x) (definition "residential mortgage transactions").  Here, Plaintiffs pled that they obtained a $460,000 mortgage loan secured by their principal residence.  Compl. ¶ 34; *see also* RJN, Ex. A (deed of trust).  Thus, Plaintiffs have failed to state a claim for rescission under TILA.

Moreover, a borrower's right to seek rescission under TILA is subject to a three-year statute of repose.  15 U.S.C. § 1635(f).  Any attempt to rescind more than three years after the date of the "consummation of the transaction" is absolutely time-barred.  *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 792 (2015); *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) ("§ 1635(f) completely extinguishes the right of rescission at the end of the 3-year period.").  "Consummation," within the meaning of TILA, "means the time that a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13).[8]  Because § 1635(f) is a statute of repose, it is not subject to tolling.  *See McOmie-Gray v. Bank of Am. Home Loans*, 667 F.3d 1325, 1329-30 (9th Cir. 2012); *see also Sotanski v. HSBC Bank USA, Nat'l Assoc.*, No. 15-CV-01489, 2015 WL 4760506, at *6 (N.D. Cal. Aug. 12, 2015) (equitable tolling does not apply to § 1635(f)'s deadline), *aff'd*, No. 15-16798, 2016 WL 7407292 (9th Cir. Dec. 22, 2016).  Here, the Deed of Trust was executed in 2006. *See* RJN, Ex. A; Compl. ¶ 24.

---

[7] As an unpublished decision, *Oliva* is not precedent, but the Court considers it for its significant persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.
[8] State law controls whether and when a consumer has become contractually obligated under TILA.  *Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989).  Under California law, contractual obligation inheres when the parties are capable of consenting and there is consent, a lawful object, and a sufficient cause or consideration. *See* Cal. Civ. Code § 1550.

1    Consequently, even if Plaintiffs could state a claim for rescission under TILA, which they cannot,

2    it would be time barred.

3         A borrower's right to seek damages under TILA is subject to a one-year statute of

4    limitations.  *See* 15 U.S.C. § 1640(e).  "[T]he limitations period in Section 1640(e) runs from the

5    date of consummation of the transaction but . . . the doctrine of equitable tolling may, in the

6    appropriate circumstances, suspend the limitations period until the borrower discovers or had

7    reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA

8    action."  *King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir. 1986).  Given that the Deed of Trust

9    was executed in 2006, the Plaintiffs claims are time barred unless equitable tolling applies.

10   However, Plaintiffs have not alleged any facts suggesting that equitable tolling should apply.  *See*

11   Compl. ¶ 189 (stating only that the statute of limitations was "tolled due to Defendants' failure to

12   effectively provide the required notices and disclosures").  Accordingly, Plaintiffs' TILA claims

13   for damages are time barred, unless they can plead with particularity a sufficient legal basis for

14   equitable tolling.[9]

15        **E.    RESPA**

16        RESPA creates a private right of action for three types of violations:

17             (1) payment of a kickback and unearned fees for real estate
             settlement services, 12 U.S.C. § 2607(a), (b); (2) requiring a buyer
18             to use a title insurer selected by the seller, 12 U.S.C. § 2608(b); and
             (3) the failure by a loan servicer to give proper notice of a transfer of
19             servicing rights or to respond to a qualified written request for
             information about a loan, 12 U.S.C. § 2605(f).

20   *Deal v. Countrywide Home Loans, Inc.*, No. C 09-01643 SBA, 2013 WL 3157914, at *2 (N.D.

21   Cal. June 20, 2013) (citing *Patague v. Wells Fargo Bank, N.A.*, No. C 10-03460 SBA, 2010 WL

22   4695480, at *3 (N.D. Cal. 2010)).  Here, Plaintiffs assert a cause of action under RESPA, 1 U.S.C.

23   § 2601 *et seq*.  However, Plaintiffs wholly conclusory allegations are insufficient to plausibly state

24   a claim arising from any of the three violations described above.  *See* Compl. ¶¶ 194-99.

25   _____

26   [9] Recognizing that the Ninth Circuit typically disfavors dismissal on statute of limitations grounds
     unless equitable tolling is clearly inappropriate, *see Supermail Cargo, Inc. v. United States*, 68
27   F.3d 1204, 1206 (9th Cir. 1995), the Court will dismiss this claim, like most of Plaintiffs' other
     claims, with leave to amend, *see Wootten v. BAC Home Loans Servicing*, LP, No. 10-CV-04946-
28   LHK, 2011 WL 500067, at *3 (N.D. Cal. Feb. 8, 2011) (dismissing TILA monetary damages
     claim on statute of limitations grounds but granting leave to amend).

United States District Court
Northern District of California

**F.      Wrongful and Defective Foreclosure**

"After a nonjudicial foreclosure sale has been completed, the traditional method by which the sale is challenged is a suit in equity to set aside the trustee's sale." *Lona v. Citibank, N.A.*, 202 Cal. App. 4th 89, 103 (2011).  An equitable cause of action to set aside a foreclosure sale has the following elements:

> (1) the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.

*Id.* at 104 (collecting cases).  With regard to the third element, the California Court of Appeal has declared that before a borrower may bring an action "to set aside the trustee's sale on the ground that the sale is voidable because of irregularities in the sale notice or procedure, the borrower must offer to pay the full amount of the debt for which the property was security." *Id.* at 112.  The justification for the tender rule is that "if the borrower could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the borrower." *Id.* at 112 (internal quotation marks and brackets omitted).

There are, however, at least four exceptions to the tender requirement.

> First, if the borrower's action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmation of the debt. . . . Second, a tender will not be required when the person who seeks to set aside the trustee's sale has a counterclaim or setoff against the beneficiary. . . . Third, a tender may not be required where it would be inequitable to impose such a condition on the party challenging the sale. . . . Fourth, no tender will be required when the trustor is not required to rely on equity to attack the deed because the trustee's deed is void on its face.

*Id.* at 112-13.

Here, Plaintiffs have not alleged specific facts plausibly showing that they tendered the debt on the Subject Property, or that any of the four exceptions to the tender requirement apply. *See* Compl. ¶¶ 208-23.

**G.      Breach of Fiduciary Duty**

Plaintiffs have failed to state facts plausibly constituting a breach of fiduciary duty or even

11

1   an underlying fiduciary relationship, *see* Compl. ¶¶ 224-28, which does not typically exist

2   between creditor and borrower, *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089,

3   1093 n.1 (1991) ("The relationship between a lending institution and its borrower-client is not

4   fiduciary in nature."); *Price v. Wells Fargo Bank*, 213 Cal. App. 3d 465, 476 (1989) ("A debt is

5   not a trust and there is not a fiduciary relation between debtor and creditor as such." (internal

6   quotation marks omitted)), *overruled on other grounds by Riverisland Cold Storage, Inc. v.*

7   *Fresno-Madera Prod. Credit Ass'n*, 55 Cal. 4th 1169 (2013).

8       **H.    Quiet Title**

9       California law permits an action "to establish title against adverse claims to real or

10  personal property or any interest therein." *See* Cal. Civ. Proc. Code § 760.020(a).  "A quiet title

11  action must include: (1) a description of the property in question; (2) the basis for plaintiff's title;

12  and (3) the adverse claims to plaintiff's title." *Kelley v. Mortg. Elec. Registration Sys., Inc.*, 642

13  F. Supp. 2d 1048, 1057 (N.D. Cal. 2009).

14      It is not entirely clear from the complaint whether the quiet title cause of action is asserted

15  solely by Diamond or also by Jorque and Palancia.  *See* Compl. ¶¶ 233-42.  Regardless, Plaintiffs

16  have failed to state plausible quiet title claims because the Subject Property has already been

17  foreclosed upon and sold.  *See* RJN, Ex. J (deed of sale); Opp. 18 (conceding that property was

18  foreclosed upon and sold); *Myvett v. Litton Loan Servicing, LP*, No. CV-08-5797 MMC, 2010 WL

19  761317, at *6 (N.D. Cal. Mar. 3, 2010) ("Here, plaintiffs claim to the property is extinguished as

20  they allege and admit the property has been sold; consequently, plaintiffs' action to quiet title

21  necessarily fails."); *Distor v. U.S. Bank NA*, No. C 09-02086 SI, 2009 WL 3429700, at *6 (N.D.

22  Cal. Oct. 22, 2009) ("[B]ecause the property has already been sold, quiet title is no longer an

23  appropriate action to seek to undo the foreclosure.  Plaintiff's claim to title has already been

24  extinguished."), *disagreed with on other grounds by Beaver v. Tarsadia Hotels*, 816 F.3d 1170,

25  1180 n.5 (9th Cir.), *cert. denied*, 137 S. Ct. 113 (2016).

26      In addition, Plaintiffs Jorque and Palancia, have failed to state a quiet title claim because

27  they have not pled facts plausibly showing that they have tendered their debts on the Subject

28  Property.  *See Shimpones v. Stickney*, 219 Cal. 637, 649 (1934) ("It is settled in California that a

United States District Court
Northern District of California

mortgagor cannot quiet his title against the mortgagee without paying the debt secured."); *Aguilar v. Bocci*, 39 Cal. App. 3d 475, 477-78 (1974) ("The cloud upon [the plaintiff's] title persists until the debt is paid. . . . He . . . cannot clear his title without satisfying his debt."); *Hamilton v. Bank of Blue Valley*, 746 F. Supp. 2d 1160, 1177 (E.D. Cal. 2010) ("[A] quiet title claim is doomed in the absence [the plaintiffs'] tender of amounts owed."); *Distor*, 2009 WL 3429700, at *6 ("Defendants are correct that plaintiff has no basis to quiet title without first discharging her debt, and that she has not alleged that she has done so and is therefore the rightful owner of the property.").

## I.   UCL

"The UCL prohibits 'unfair competition,' which is broadly defined to include 'three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent.'" *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012) (quoting *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)). "Because the statute is written in the disjunctive, it is violated where a defendant's act or practice violates any of the foregoing prongs." *Id.* at 1168. Under the "unlawful" prong, violations of other laws are treated as "unlawful practices" that are independently actionable under the UCL. Under the "fraudulent" prong, "[a] business practice is fraudulent . . . if members of the public are likely to be deceived." *Id.* at 1169. Under the "unfair" prong, there is a split of authority regarding which of three different tests should be applied in consumer cases. *See id.* at 1170 (describing split in authority); *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 256-57 (2010) (same); William L. Stern, *Business & Professions Code Section 17200 Practice* § 3:118-3:121.1 (Cal. Rutter Guide, March 2016) (same). In *Drum*, the Court summarized the three tests as follows:

> The test applied in one line of cases requires "that the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." . . . The test applied in a second line of cases is whether the alleged business practice "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." . . . The test applied in a third line of cases draws on the definition of "unfair" in section 5 of the Federal Trade Commission Act, and requires that "(1) the consumer injury must be

substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided."

182 Cal. App. at 256-57.

Here, Plaintiffs contend that Defendants have violated the UCL from June 5, 2006 until the present by "[b]y recording FRAUDULENT DOCUMENTS to deceive Plaintiffs and the Court." Compl. ¶¶ 244-45 (capitalization in original). This is patently insufficient to plausibly state a claim under any of the prongs of the UCL.

**J.  "Unfair and Deceptive Business Act Practices"**

Plaintiffs' cause of action for "Unfair and Deceptive Business Act Practices" contains only vague allegations and no citation to any statute or other authority. *See* Compl. ¶¶ 205-07. Presented with identical language regarding the asserted cause of action, a federal district court in California recently analyzed the allegations under the UCL. *See Ghuman v. Wells Fargo Bank, N.A.*, No. 1:12-cv-00902-AWI-BAM, 2012 WL 3028009, at *6 (E.D. Cal. July 24, 2012) ("Plaintiffs . . . assert a cause of action . . . for 'Unfair and Deceptive Business Act Practices,' presumably a claim of unfair and fraudulent business practices in violation of California's Unfair Competition Law (UCL), California Business and Professions Code §§ 17200 et seq."). Plaintiffs' vague and conclusory allegations, however, are wholly inadequate to plausibly state a claim under the UCL. *See* Compl. ¶¶ 205-07; *see also supra* Part V.I (stating elements of UCL claim).

**K.  Unconscionability**

Under California law, unconscionability is a contract enforcement defense, not a cause of action. *See* Cal. Civ. Code 1670.5; *Dean Witter Reynolds, Inc. v. Superior Court*, 211 Cal. App. 3d 758, 766 (1989) ("Civil Code section 1670.5 does not create an affirmative cause of action but merely codifies the *defense* of unconscionability" (emphasis in original)). Plaintiffs have therefore failed to state a claim upon which relief can be granted.

**L.  Injunctive Relief**

"[U]nder both federal and state law, injunctive relief is merely a remedy, not an independent cause of action. . . . Thus, where a plaintiff alleges a cause of action for injunction, courts routinely dismiss it." *Reyes v. Nationstar Mortgage LLC*, No. 15-cv-01109-LHK, 2015

14

1    WL 4554377 (N.D. Cal. July 28, 2015) (internal quotation marks omitted)).  So too is the cause of

2    action dismissed here—but without prejudice as to seeking injunctive relief as a *remedy*.

3    **M.    Declaratory Relief**

4         The parties do not specifically address whether the federal Declaratory Judgment Act

5    ("DJA"), 28 U.S.C. § 2201, or the California Declaratory Relief Act ("CDRA"), Cal. Civ. Proc.

6    Code § 1060, applies to Plaintiffs' cause of action for declaratory relief.[10]  The court finds that the

7    DJA applies, based upon its procedural nature.  *See in re Adobe Sys., Inc. Privacy Litig.*, 66 F.

8    Supp. 3d 1197, 1219 (N.D. Cal. 2014).[11]  The DJA states in part,

9               In a case of actual controversy within its jurisdiction, . . . any court
                of the United States, upon the filing of an appropriate pleading, may
                declare the rights and other legal relations of any interested party
10              seeking such declaration, whether or not further relief is or could be
                sought. Any such declaration shall have the force and effect of a
11              final judgment or decree and shall be reviewable as such.

12   28 U.S.C. § 2201(a) (2012).[12]

13        A federal court may not award declaratory relief unless "there is a case of actual

14   controversy within its jurisdiction."  *See Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir.

15   1994) (citation omitted).  The DJA is "procedural only" and does not extend federal jurisdiction.

16   *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671-72 (1950) (citation omitted).  Thus, a

17   federal court may not award declaratory relief unless the underlying claim provides a basis for

18   federal subject matter jurisdiction.  *See id.* at 674.  As a procedural statute dependent on an

19   underlying cause of action, the DJA makes available an "additional remedy to litigants" without

20   creating an independent "theory of recovery."  *See Team Enters., LLC v. W. Inv. Real Estate Trust*,

21   721 F. Supp. 2d 898, 911 (E.D. Cal. 2010) (original emphasis) (citations omitted), *aff'd*, 446 Fed.

22   App'x. 23 (9th Cir. 2011).  Therefore, "where the plaintiff's underlying claims fail, so too does his

23   declaratory relief claim."  *See Canatella v. Reverse Mortg. Sols. Inc.*, No. 13-CV-05937-HSG,

24   2016 WL 6070508, at *7 (N.D. Cal. Oct. 17, 2016) (internal quotation marks omitted), *appeal*

United States District Court
Northern District of California

---

[10] Defendants, however, appear to assume that the CDRA applies, as they exclusively cite state appellate decisions.  *See* Mot. 9; Reply 4; Supp. Br. 4.
[11] That said, the Court recognizes that "whether the state or federal [declaratory relief] statute applies makes little difference as a practical matter, as the two statutes are broadly equivalent."  *See Adobe Sys.*, 66 F. Supp. 3d at 1219.
[12] Section 2201(a) includes several exceptions, but none are relevant here.

1    *filed*, No. 16-17281 (9th Cir. Dec. 16, 2016).[13]

2         Here, the action was removed to federal court based upon federal question jurisdiction.

3    *See* Dkt. No. 1 at 3.  However, Plaintiff has failed to state any claim upon which relief can be

4    granted.  In the absence of other federal claims, it is not "clear from the face of the plaintiff's well-

5    pleaded complaint" that this case presents "a federal question."  *See Easton v. Crossland Mortg.*

6    *Corp.*, 114 F.3d 979, 982 (9th Cir. 1997).  Without an underlying basis for federal subject matter

7    jurisdiction, the Court may not award declaratory relief.  *See Skelly Oil*, 339 U.S. at 674.

8    Moreover, Plaintiffs' request for declaratory relief does not constitute an independent basis for

9    recovery, and may not stand alone.  *See Team Enters.*, 721 F. Supp. 2d at 911; *Andre*, 2016 WL

10   69914, at *3.  Absent an underlying claim for relief, their claims for declaratory relief must be

11   dismissed.  *See Canatella*, 2016 WL 6070508, at *7.

12   **VI.    CONCLUSION**

13        For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**.  Leave to amend

14   is **GRANTED** for all causes of action, with two exceptions.  As stated above, unconscionability is

15   a contract defense and injunctive relief is a remedy.  Therefore, Plaintiffs may not reallege those

16   "causes of action."  In addition, the Court cautions that its decision to provide leave to amend is

17   not an invitation for Plaintiffs to replead substantially similar facts in the hope of a different result.

18

19   [13] Many other district courts in the Ninth Circuit have reached the same holding as *Canatella*.  *See Andre v. Bank of Am., NA*, No. 14-CV-02888-PSG, 2016 WL 69914, at *3 (N.D. Cal. Jan. 6,

20   2016) ("[B]ecause [the plaintiff's] underlying claims fail, so too does his declaratory relief claim." (internal brackets and ellipsis omitted)), *appeal dismissed*, No. 16-15653 (9th Cir. Sept. 9, 2016);

21   *Starbucks Corp. v. Amcor Packaging Distrib.*, No. CIV. 2:13-1754 WBS, 2014 WL 5780951, at *9 (E.D. Cal. Nov. 5, 2014) ("'A plaintiff is not entitled to such relief without a viable underlying

22   claim, so when the underlying claim is dismissed, the declaratory relief cause of action must be dismissed as well.'" (quoting *Bates v. Suntrust Mortg. Inc.*, No. 2:13-cv-0142-TLN-DAD, 2013

23   WL 6491528, at *4 (E.D. Cal. Dec. 10, 2013))); *Fallbrook Hosp. Corp. v. Cal. Nurses Ass'n/Nat.Nurses Org. Comm.*, No. 13CV1233-GPC WVG, 2013 WL 5347271, at *3 (S.D. Cal.

24   Sept. 23, 2013) ("Since the Court dismisses the underlying claims, the Court also GRANTS Defendant's motion to dismiss the declaratory judgment cause of action."); *Allied Prop. & Cas.*

25   *Ins. Co. v. Dick Harris, Inc.*, No. CIV. 2:13-00325 WBS, 2013 WL 2145961, at *7 (E.D. Cal. May 15, 2013) ("[B]ecause plaintiff cannot state a claim for relief against defendant, its request for

26   declaratory relief against defendant also falls."); *Soares v. ReconTrust Co.*, No. 12-00070, 2012 WL 1901234, at *7 (N.D. Cal. May 25, 2012) (dismissing Plaintiff's declaratory relief claim

27   because he was "not entitled to such relief absent a viable underlying claim"); *Junod v. Dream House Mortg. Co.*, No. CV 11-7035-ODW VBKX, 2012 WL 94355, at *6 (C.D. Cal. Jan. 5, 2012)

28   ("[W]here as here, the plaintiff has not adequately pled an underlying claim for relief, her declaratory relief claim cannot stand alone, and is therefore subject to dismissal.").

United States District Court
Northern District of California

If Plaintiffs cannot plead facts that remedy the deficiencies identified by the Court, they should not file an amended complaint.  In deciding whether to file an amended complaint, and if so, what claims to allege in it, Plaintiffs should carefully consider their obligations under Rule 11 of the Federal Rules of Civil Procedure.  Any amended complaint must clearly and **concisely** state the basis for all claims alleged.  Any amended complaint must be filed within 28 days of the date of this Order.

**IT IS SO ORDERED.**

Dated: 1/31/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge

United States District Court
Northern District of California